UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KNOLTS HUTCHINSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, WARDEN R. RACKLEY, WARDEN B. DUFFY, ASSOCIATE WARDEN M. KAPLAN, FACILITIES SARGEANT A. ROMERO,<br><br>　　　　Defendants. | CIV. NO. 2:14-02398 WBS EFN<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT</u> |

----oo0oo----

　　　　Plaintiff Knolts Hutchinson filed this action against defendants California Department of Corrections and Rehabilitation ("CDCR"), Warden Rackley, Warden Duffy, Associate Warden Kaplan, and Facilities Sergeant Romero, for violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the California Disabled Person Act ("CDPA"), the Unruh Civil

1

Rights Act ("Unruh Act"), and deliberate indifference in violation of the Eighth Amendment. Pursuant to Federal Rule of Civil Procedure 56, defendants now move for summary judgment against plaintiff. (Docket No. 39.)

I. Factual and Procedural Background

Plaintiff is a paraplegic inmate incarcerated by the CDCR. He is paralyzed from the chest downwards, lacks bowel and bladder control, and requires the use of a wheelchair.

In March 2013, plaintiff filed a lawsuit in federal court against the CDCR and several employees, alleging he had been injured at the California Medical Facility ("CMF") because he was provided with a locker that did not comply with the ADA. That case was voluntarily dismissed on November 14, 2016. See Hutchinson v. Cal. Dep't of Corr. & Rehab., Civ. No. 2:16-00620 MCE AC (E.D. Cal.).

On October 27, 2013, plaintiff was transferred from the CMF to the California Health Care Facility ("CHCF"). CHCF houses and treats inmates who require a higher level of care due to disability. Duffy was the CMF Acting Warden from 2012 to August 25, 2014, and was the CHCF Acting Warden from August 25, 2014, to April 23, 2015. (Defs.' Statement of Undisputed Facts, Ex. C ("Duffy Decl.") ¶¶ 2-3 (Docket No. 39-2).) Rackley was the CHCF Warden prior to August 25, 2014. (Id., Ex. D ("Rackley Decl.") ¶ 2.)

On November 4, 2013, plaintiff filed a request for an adjustable trapeze bar that would allow him to transfer from his bed to his wheelchair by himself, similar to the one he had in

the CMF.[1]  (Id., Ex. H ("Trapeze Bar Request").)  On November 25, 2013, and prior to his First Level of Review for this request, plaintiff received a trapeze bar.  (Id., Ex. I ("First Level Appeal").)  Romero and Kaplan subsequently granted plaintiff's trapeze bar request at the First Level of Review based on plaintiff's representation that "[t]he issue had been resolved" and based on their understanding that plaintiff was receiving assistance from medical staff when transferring from his bed to his wheelchair and could also transfer without assistance.  (Id.) In March 2015, plaintiff received a different trapeze bar that was adjustable and moveable.  (Hutchinson Dep. 96:15-97:4 (Docket No. 43-2).)

On November 10, 2013, plaintiff filed a request for a rolling commode chair.  (Defs.' Statement of Undisputed Facts, Ex. J ("Rolling Commode Request").)  He wanted the chair, in part, so he could defecate in the shower.  (Id., Ex. L ("Dr. Williams Decl.") ¶ 8.)  On review, Romero denied plaintiff's request for a rolling commode chair because he could transfer himself from the toilet to the shower, assistance from medical staff was available, and medical staff determined it was not safe or medically necessary.  (Id., Ex. F ("Romero Decl.") ¶¶ 11-13.) Plaintiff instead received a stationary commode chair and shower chair.  (Id.)  Dr. Williams reviewed Romero's decision and reaffirmed that the rolling commode chair was not safe and did

---

[1] Plaintiff had a moveable, or adjustable, trapeze bar at the previous facility because all of the beds were secured to the ground.  In contrast, at the CHCF, plaintiff's bed is mobile so it is safer to have a trapeze bar that is fixed to the bed in order to prevent a fall.  (See Dr. Williams Decl. ¶ 7.)

3

not provide better accommodation than the stationary commode chair. (Dr. Williams Decl. ¶ 8.)

Plaintiff brought this suit and alleges the following causes of action: (1) violation of Title II of the ADA ("Title II"); (2) retaliation in violation of Title V of the ADA; (3) violation of Section 504 of the Rehabilitation Act ("Section 504"); (4) violation of the CDPA; (5) violation of the Unruh Act; and (5) deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment. (Second Am. Compl. (Docket No. 33).) Now before the court is defendants' Motion for summary judgment on all causes of action. (Docket No. 39.)

II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

1          Once the moving party meets its initial burden, the
burden shifts to the non-moving party to "designate 'specific
facts showing that there is a genuine issue for trial.'" Id. at
324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,
the non-moving party must "do more than simply show that there is
some metaphysical doubt as to the material facts." Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
"The mere existence of a scintilla of evidence . . . will be
insufficient; there must be evidence on which the jury could
reasonably find for the [non-moving party]." Anderson, 477 U.S.
at 252.  "[T]he non-moving party may not rely on the mere
allegations in the pleadings in order to preclude summary
judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

          In deciding a summary judgment motion, the court must
view the evidence in the light most favorable to the non-moving
party and draw all justifiable inferences in its favor.
Anderson, 477 U.S. at 255.  "Credibility determinations, the
weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of a
judge . . . ruling on a motion for summary judgment . . . ." Id.

III. Discussion

   A.   Retaliation in Violation of Title V of the ADA

          Plaintiff argues the individual defendants retaliated
against him by transferring him from CMF to CHCF and denying him
a rolling commode chair and moveable trapeze bar because of his
prior lawsuit against the CDCR.  Title V of the ADA provides: "No
person shall discriminate against any individual because such

5

individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

To make out a prima facie retaliation case, the plaintiff must show "(1) involvement in a protected activity, (2) an adverse . . . action and (3) a causal link between the two." Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th Cir. 2003) (quoting Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000)). If the plaintiff establishes a prima facie case, the defendant has the burden to "offer[] legitimate reasons for the adverse . . . action." Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004). If the defendant provides legitimate reasons, the burden shifts to plaintiff "to demonstrate a triable issue of fact as to whether such reasons are pretextual." Id.

Plaintiff has not established a prima facie case. First, there is no evidence that Duffy took adverse action against plaintiff. He was not involved in the decision to transfer plaintiff from CMF to CHCF.[2] (Duffy Decl. ¶¶ 4-5.) Once at CHCF, Duffy was not involved in plaintiff's request for a trapeze bar or rolling commode chair. (Id. ¶ 6; Hutchinson Dep. 74:11-19.) Because there is no evidence that he took an adverse action against plaintiff, plaintiff's retaliation claim against

---

[2] Plaintiff attempts to dispute this evidence by pointing to an excerpt of plaintiff's deposition. However, this portion of the deposition discusses Duffy's knowledge of plaintiff's need for a locker at CMF (the subject matter of the prior lawsuit), not Duffy's involvement in the decision to transfer plaintiff to CMF. (See Hutchinson Dep. 68:20-69:11.)

6

Duffy must fail.

As to defendants Rackley, Kaplan, and Romero, there is no causation evidence. If a defendant did not know of a plaintiff's protected activity, the defendant could not take adverse action against the plaintiff based on that activity. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (holding a retaliation claim failed because there was insufficient evidence that defendants knew of the prisoner's protected activity). There is no evidence that Rackley, Kaplan, and Romero knew plaintiff previously filed an ADA suit. They only learned of plaintiff's prior suit when they were served in this action.[3] (Rackley Decl. ¶ 3; Kaplan Decl. ¶ 7; Romero Decl. ¶ 14.) There is also no evidence that Rackley, Kaplan, and Romero were involved with plaintiff's transfer from CMF to CHCF.[4] Because it is undisputed that they did not know plaintiff filed a previous lawsuit when any alleged adverse action occurred, plaintiff cannot establish that they retaliated against him.

Plaintiff argues that the temporal proximity between the filing of his prior lawsuit and his transfer to CHCF establishes the causation prong. While circumstantial evidence is admissible to prove causation, "mere temporal proximity . . . must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532

---

[3] Plaintiff attempts to rebut this evidence by referencing his Second Amended Complaint; however, he "may not rely on the mere allegations in the pleadings in order to preclude summary judgment." T.W. Elec. Serv., 809 F.2d at 630.

[4] The claim against Rackley also fails for lack of an adverse action because he was not involved in the denial of plaintiff's modification requests. (Rackley Decl. ¶ 4.)

7

U.S. 268, 273-74 (2001) (per curiam) (citing with approval cases in which three- and four-month periods were insufficient to establish a causal connection); see, e.g., Swan v. Bank of Am., 360 Fed App'x 903, 906 (9th Cir. 2009) (finding four-month period was insufficient to show causation premised solely on temporal proximity); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1035, 1037 (9th Cir. 2006) (holding eight-month gap between protected activity and termination was "too great to support an inference" that the protected activity caused an adverse action). The seven-month span between the filing of plaintiff's previous lawsuit and his transfer to CHCF alone is not enough to establish causation.

Plaintiff cannot establish a prima facie retaliation claim against any of the defendants. Accordingly, the court will grant summary judgment on plaintiff's ADA retaliation claim.

B. Title II and Section 504

All defendants seek summary judgment on plaintiff's Title II and Section 504 claims, arguing that they did not discriminate against him because of his disability and he was still able to complete his bowel program and access the shower.[5]

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability,

---

[5] Plaintiff cannot sue the individual defendants in their individual capacities for violations of Title II or the Section 504. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("A plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act.") Plaintiff may still sue the individual defendants in their official capacity for injunctive relief.

be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must show "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services . . . or was otherwise discriminated against by the public entity; and (3) such exclusion, denial . . . , or discrimination was by reason of his disability." Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001) (quoting Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997)). The requirements under Section 504 of the Rehabilitation Act are the same, except that it is limited to programs that receive federal financial assistance. Armstrong v. Davis, 275 F.3d 849, 862 n.17 (9th Cir. 2001).[6]

The implementing regulations of Title II provide that "[a] public entity shall make reasonable modifications in policies, practice, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The duty to provide "reasonable accommodations" for disabled people arises only when a policy, practice, or procedure discriminates on the basis of disability. Weinreich, 114 F.3d at 979.

---

[6] Neither party disputes that the California prison system receives federal financial assistance. See Armstrong, 275 F.3d at 862 n.17.

9

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall, 260 F.3d at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.

It is undisputed that plaintiff is disabled and CDCR is a public entity. Thus, the inquiry is whether defendants provided reasonable accommodations and whether defendants intentionally discriminated against plaintiff. The plaintiff bears the burden of establishing the existence of specific reasonable accommodations that the defendant public entity failed to provide. See Weinreich, 114 F.3d at 978. Determining whether a modification or accommodation is reasonable is a fact-specific, context-specific inquiry. Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1048 (9th Cir. 1999). The court may "consider, with deference to the expert views of the facility administrators, a detention or correctional facility's legitimate interest . . . when determining whether a given accommodation is reasonable." Pierce v. County of Orange, 526 F.3d 1190, 1216 (9th Cir. 2008). Here, plaintiff's requested accommodations were unreasonable and defendants provided reasonable accommodations.

It is undisputed that the rolling commode chair and adjustable trapeze bar were unsafe and medically unnecessary at CHCF. (Romero Decl. ¶ 10; Dr. Williams Decl. ¶¶ 7-8.) The requested trapeze bar is unsafe because plaintiff's bed is mobile

and the requested trapeze bar would be affixed to the wall, which could cause the bed to move during transfer. (See Dr. Williams Decl. ¶ 7.) This increases plaintiff's chances of falling. (Id.) The rolling commode is unsafe because it is not hygienic, permits plaintiff to defecate in the shower, and wet moveable equipment is substantially more dangerous than stationary wet equipment. (Id. ¶ 8.) Transfer from a wheelchair to rolling commode chair is also more unsafe than to a stationary chair because a person is transferring between two moveable objects. (Id.) Plaintiff provides no evidence or expert testimony controverting defendants' expert testimony that plaintiff's requested accommodations were unsafe. See Weinreich, 114 F.3d at 978. Because both the requested trapeze bar and rolling commode chair are unsafe, they are not reasonable accommodations.

Even if plaintiff's requested accommodations were reasonable, defendants only need to provide a reasonable accommodation, not plaintiff's requested accommodation. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation."); Connor v. California, Civ. No. 1:10-1967 AWI BAM, 2013 WL 321703, at *7 (E.D. Cal. Jan. 28, 2013) (McAuliffe, M.J.). The trapeze bar and commode chair defendants provided were reasonable accommodations. Dr. Williams's expert declaration recommends both the trapeze bar and stationary commode chair provided by CDCR. (Dr. Williams Decl. ¶¶ 13, 15.) Plaintiff received an "optimally safe trapeze" for the mobile beds at CHCF because it is attached to the bed itself,

11

limiting his chances of falling if the bed were to move. (Id. ¶ 7.) Plaintiff is still able to transfer from his bed to wheelchair, alone or with the assistance of medical staff. The stationary commode chair is safe because it acts as an anchor when plaintiff attempts to transfer from the moveable wheelchair to the stationary commode chair. (Id. ¶ 8.) Plaintiff can still complete his bowel movement with the stationary commode chair and can then transfer to his wheelchair to shower.

Plaintiff argues in his opposition that he was unable to safely transfer alone; however, he concedes that it was "not that much of a problem" to transfer in and out of bed using a transfer board and trapeze bar and plaintiff demonstrated his ability to use the trapeze bar to medical staff. (Id. ¶ 9, Ex. B; Hutchinson Dep. 79:16-21; 81:19-23.) Additionally, there is no evidence that plaintiff's requested devices "address his medical condition any better than the devices" provided at CHCF. (Dr. Williams Decl. ¶¶ 13, 15.) Plaintiff submits no expert testimony to rebut defendants' evidence that the accommodations provided were adequate, safe, and reasonable.

Plaintiff also fails to show any evidence of intentional discrimination by defendants because of plaintiff's disability. He argues that he would sometimes have to wait for up to an hour for staff assistance if they were busy or it was around 2:00 a.m. and he once fell when staff was helping him transfer. The delay occurred on only a few occasions and plaintiff fell only once, (id. 99:11-23, 106:23-107:23), and isolated acts of negligence are insufficient for an ADA claim, Jamison v. Baillie, Civ. No. 2:10-124 KJM EFB P, 2016 WL 775746,

12

at *6 (E.D. Cal. Feb. 29, 2016) (Brennan, M.J.).  See Moore v. Curtis, 68 F. App'x 561, 563 (6th Cir. 2003) (alleging isolated instances of failure to accommodate disabled prisoner's condition does not state a claim under the ADA); Calbart v. Denver Sheriff Dep't, No. 10-cv-1385-LTB-CBS, 2012 WL 1229923, at *9 (D. Colo. Feb. 23, 2012) (finding interference with prescribed treatment regime does not constitute discrimination under the ADA). Further, this evidence does not show that defendants discriminated against him because of his disability.  To the contrary, CDCR provided him with accommodations that allowed him to transfer from his bed, complete his bowel program, and shower.

Additionally, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). "This is equally applicable to the statutory rights created by the [ADA and Rehabilitation Act]." See Gates v. Rowland, 39 F.3d 1439, 1447 (9th Cir. 1994). Here, he was denied his specific accommodations because they were unsafe, which is a legitimate penological interest.  See Washington v. Harper, 494 U.S. 210, 225 (1990) (holding prison officials have an interest and "duty to take reasonably measures for the prisoners' own safety"). Because prisons have an interest in taking reasonable measures to protect prisoner safety and defendants denied plaintiff's requests for his safety, summary judgment is proper on this basis as well.

Plaintiff fails to create a triable issue of fact as to whether defendants provided plaintiff with a reasonable accommodation and whether defendants intentionally discriminated

13

against him.  Accordingly, the court must grant defendants' summary judgment on plaintiff's Title II and Section 504 claims.

C. State Law Claims

Plaintiff brings CDPA and Unruh Act claims against defendant CDCR.  Defendant CDCR seeks summary judgment because CDCR, as an agency of California, is immune from suit under the Eleventh Amendment.

The Eleventh Amendment bars any suit against a state or state agency absent a valid waiver or abrogation of its sovereign immunity.  Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 10 (1890).  This immunity applies to state law claims brought into federal court under pendent jurisdiction.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984).  "[A]bsent a state's unequivocal consent, the Eleventh Amendment bars a federal court from entertaining a suit against the state, or one of its agencies or departments, based on a state law."  Hall v. Hawaii, 791 F.2d 759, 761 (9th Cir. 1986).

The Unruh Act and the CDPA have the same substantive standards as the ADA.  The Unruh Act and the CDPA do not, however, address the applicability of the Eleventh Amendment or California's consent to suit in federal court.  See Cal. Civ. Code § 51(f) (Unruh Act); Cal. Civ. Code § 54.1(d) (CDPA).  Plaintiff argues that California explicitly abrogated state sovereign immunity because (1) Congress explicitly abrogated state sovereign immunity in enacting the ADA and (2) the California legislature explicitly incorporated the ADA into the Unruh Act and the CDPA.  (Pl.'s Opp'n 17:3-20:22.)

1  The courts that have considered plaintiff's argument
2  have rejected it.  See, e.g., Barker v. Cal. Dep't of Corr. &
3  Rehab., Civ. No. 2:13-1793 KJM KJN P, 2015 WL 3913546, at *7-8
4  (E.D. Cal. June 25, 2015) (Newman, M.J.); Hutchinson v. Cal.
5  Dep't Corr. & Rehab., Civ. No. 2:13-620 MCE AC, 2013 WL 5569984,
6  at *3 (E.D. Cal. Oct. 9, 2013) ("Plaintiff does not explain how
7  mandating that the baseline substantive standards under the Unruh
8  Act and the CDPA comport with the ADA unequivocally demonstrates
9  that the State of California intended to subject itself to all
10 suits brought under those provisions."); Myers v. Cal. Dep't of
11 Rehab., Civ. No. 2:12-497 GEB GGH, 2012 WL 3529784, at *3 (E.D.
12 Cal. Aug. 14, 2012) ("[Plaintiff] fails to demonstrate that
13 California made a 'clear declaration' in the Unruh Act of an
14 intent to waive its sovereign immunity . . . .").

15         CDCR is presumptively entitled to immunity, Franceschi
16 v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995), and plaintiff
17 provides no basis to deviate from these prior orders.  Plaintiff
18 also cites no authority, nor has the court found any, that
19 supports plaintiff's argument that the same substantive standards
20 in the Unruh Act, CDPA, and ADA demonstrates an unequivocal
21 consent to suit under the Unruh Act and the CDPA.

22         Because plaintiff fails to establish that California
23 unequivocally consented to suit under the CDPA and the Unruh Act,
24 CDCR is immune from suit under the Eleventh Amendment.
25 Accordingly, the court must grant summary judgment on plaintiff's
26 CDPA and Unruh Act claims.

27    D.   Section 1983 Claim

28         Plaintiff argues the individual defendants violated his

Eighth Amendment rights by not providing him with his requested trapeze bar and rolling commode chair.

To prevail under 42 U.S.C. § 1983 for inadequate medical care under the Eighth Amendment, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Here, it is undisputed that plaintiff has a serious medical need as a paraplegic who lacks bowel and bladder control and requires a wheelchair, catheter, and diapers.

For the same reasons that defendants were not deliberately indifferent under Title II when they provided plaintiff with reasonable accommodations, defendants are not deliberately indifferent to plaintiff's serious medical needs under the Eighth Amendment. Defendants, after reviewing the medical staff recommendations, provided plaintiff with a trapeze bar, stationary commode chair, and shower chair to satisfy plaintiff's medical needs. See Coats v. Kimura, Civ. No. 2:09-1830 KJM KJN P, 2013 WL 76288, at *20 (E.D. Cal. Jan. 4, 2013) (finding appeal reviewers were not deliberately indifferent for relying upon the recommendation of medical specialists handling a prisoner's medication). Plaintiff fails to show how providing these devices instead of his requested devices amounts to defendants "disregard[ing] an excessive risk to [plaintiff's] health and safety." See Farmer v. Brennan, 511 U.S. 825, 837-38

(1994).  Accordingly, the court will grant summary judgment as to plaintiff's claim under 42 U.S.C. § 1983.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be, and the same hereby is, GRANTED.

Dated:  May 16, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE